# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| BABY OIL, INC. | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO. 08-3619 |
| CEDYCO CORPORATION, ET AL. | * | SECTION "L"(5) |

## ORDER & REASONS

Before the Court is the Motion to Remand to State Court filed by Baby Oil, Inc. (Rec. Doc. No. 5). For the following reasons, the Motion is hereby GRANTED.

## I. Background

Plaintiff ("Baby Oil") filed a declaratory action on May 13, 2004, in state court to determine the rights and obligations of the parties as regards ownership of an oil well in the Deer Island Field located in Terrebonne Parish, known as the CL&F No. 2 well, and proceeds from sales from that well. Plaintiff is the operator of the CL&F No. 2 well. There is a dispute over who owns a certain 26.7948 percent (hereinafter "26%") interest in the well purportedly sold by Defendant Petroquest. Defendant Suard Barge claims that it owns the 26% interest pursuant to a Purchase and Sale Agreement entered into with Petroquest in April of 2003. Defendant Cedyco claims that it purchased Petroquest's 26% from Petroquest at an auction held in Houston, Texas. Cedyco also owned an original working interest in the well of 11.77520 percent (hereinafter "11%").

Prior to the instant suit being filed, Cedyco filed two lawsuits in Texas regarding the dispute. All three suits involve the same well in the Deer Island Field and ownership and rights

therein. In the Texas state lawsuit, Cedyco filed suit against Baby Oil, Suard Barge, Gulfmark, and SemCrude seeking recognition of and payment for its original 11% interest. In the Texas federal lawsuit, *Cedyco Corporation v. Petroquest Energy* (H-03-1668) filed in the Southern District of Texas on March 3, 2003, Cedyco alleged that Petroquest sold its interest in the Deer Island Field and the well to Cedyco at an auction held in Houston, Texas prior to the Purchase and Sale agreement between Petroquest and Suard Barge. The district court granted summary judgment in favor of Cedyco finding that Petroquest breached a contract to sell its working interest in two oil wells.

Plaintiff also claims that Defendants Gulfmark Energy and SemCrude have purchased crude oil from it. Allegedly, these two Defendants have refused to pay disputed proceeds to the Plaintiff and have, instead, deposited the disputed funds into the registry of the Harris County Texas Court. Moreover, according to the Plaintiff, both Cedyco and Suard Barge have made competing claims for payment of the disputed funds from Baby Oil, the operator of the well.

Thus, in its declaratory judgment, Plaintiff averred that there is a dispute as to whether and in what percentage Cedyco has an interest in the proceeds from the well. Moreover, Plaintiff claims there is a dispute between the parties as to whether Petroquest sold its interest in the well to Cedyco or Suard Barge. Petroquest and Suard Barge are Louisiana corporations with their principal places of business located in Louisiana.

Cedyco removed the matter on January 5, 2005, to this Court, alleging that the non-diverse Defendants Petroquest and Suard Barge were fraudulently joined for the sole purpose of defeating diversity. Defendants Suard Barge and Petroquest respectively filed objections to the notice of removal because Cedyco did not seek their consent to the removal. Suard Barge

argued, among other things, that it is the owner of the disputed 26%. Thus, as a potential beneficiary of a proportion of this working interest, Suard Barge claimed to have a direct financial interest in the action.

On Wednesday, March 16, 2005, this Court heard oral argument on the Plaintiff's motion to remand the matter back to state court.[1] The Court granted the motion and remanded the case back to state court. Cedyco then filed a motion for a new trial. On April 6, 2005, the Court issued an Order & Reasons denying Cedyco's Motion for a New Trial, finding that Cedyco's broad conclusory statements and unsupported allegations regarding the Plaintiff's motives failed to support its allegations that Petroquest and Suard Barge were fraudulently joined.[2] Cedyco filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit on April 25, 2005, which was dismissed for want of prosecution. On July 15, 2005, the Fifth Circuit informed this Court that the appeal had been reinstated. On January 18, 2009, the Fifth Circuit again dismissed Cedyco's appeal for want of prosecution.

After remand on April 4, 2006, the 32nd Judicial Court for Terrebonne Parish ruled on two motions for partial summary judgment filed by Defendant Suard Barge against Defendant Cedyco. The court ruled that Cedyco, after receiving money damages against Petroquest for breach of contract in failing to convey the 26% interest, could not thereafter claim ownership of the interest and seek specific performance. While this action was pending, on August 17, 2007, the United States Fifth Circuit Court of Appeals reversed a decision of the federal court in Texas. The Fifth Circuit ruled that Cedyco did not acquire the Petroquest interest at an auction, because

---

[1] *See* Rec. Doc. No. 15 in Case 2:05-CV-00033-EEF-ALC.

[2] *See* Rec. Doc. No. 19 in Case 2:05-CV-00033-EEF-ALC.

Exxon Corporation failed to give the required unconditional consent to the assignment of the interest to Cedyco.

Baby Oil and Suard Barge filed a motion in Louisiana state court to compel payment of sales proceeds attributable to the 26% working interest. This motion was set for hearing on June 6, 2008.

Cedyco removed the matter again on June 2, 2008, to this Court, alleging that facts and circumstances have now come to light which conclusively demonstrate that the non-diverse Defendants Petroquest and Suard Barge were fraudulently joined for the sole purpose of defeating diversity.[3] Cedyco asserted that recent pleadings in state court demonstrated that Baby Oil and Suard Barge have no opposing interests. Further, according to Cedyco, the facts and circumstances surrounding the litigation, particularly the fact that the Plaintiff has taken no action with regard to its claims against Petroquest, demonstrate that Petroquest was fraudulently joined.

Plaintiff Baby Oil and Defendant Suard Barge filed a motion to remand on July 1, 2008 and the Court set the matter for hearing on August 6, 2008.[4] One day before the scheduled hearing on the motion to remand, Defendant SemCrude filed its notice of Bankruptcy with this Court.[5] On August 15, 2008, this Court administratively closed the case until such time as the automatic stay is lifted. On March 12, 2009, the United States Bankruptcy Court for the District of Delaware lifted the automatic stay solely for the limited purposes to allow this Court to rule

---

[3] *See* Rec. Doc. No. 1.

[4] *See* Rec. Doc. No. 5.

[5] *See* Rec. Doc. No. 16.

on the Motion to Remand.⁶ The Bankruptcy Court further directed Baby Oil to dismiss SemCrude from this action with prejudice immediately after the Court issues an order on the instant motion.⁷ In light of the order lifting the automatic stay, this Court granted Defendant Suard Barge's motion to reopen the case.⁸

## II.    PRESENT MOTION

Plaintiff Baby Oil and Defendant Suard Barge bring the instant motion arguing that Cedyco has failed to prove that Petroquest and Suard Barge have been fraudulently joined. To date, Petroquest is still the title owner of the interest in the well. Cedyco has already sued Petroquest for breach of contract and specific performance in Texas federal court. Petroquest has an interest in the instant action for declaratory judgment because a ruling in favor of Cedyco in the Texas court and in favor of Suard Barge in the Louisiana state court could expose Petroquest to inconsistent rulings and liability to both Cedyco and Suard Barge. Further, although Cedyco contends that Suard Barge no longer has an interest, as it assigned its interest to Baby Oil, there is no evidence that Suard Barge ever obtained the necessary written consent of Exxon to validly assign its interest.

In addition, Plaintiff Baby Oil and Defendant Suard Barge argue that Cedyco has failed to prove the elements of the *Tedford*⁹ exception to the one year limitation on removal. Cedyco's allegation that Baby Oil has not taken a position against Petroquest, and the unproved claim that

---

⁶*See* Rec. Doc. No. 18-4.

⁷*See id*.

⁸*See* Rec. Doc. No. 19.

⁹*Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003).

5

Suard Barge has validly assigned its interest to Baby Oil, do not arise to the level of forum manipulation found in the *Tedford* case. Thus, Cedyco's removal, occurring more than three years after the filing of the state lawsuit, is untimely. Third, Baby Oil and Suard Barge assert that Cedyco did not seek consent from all Defendants prior to filing its Notice of Removal, in violation of 28 U.S.C. §1446(a). Petroquest has filed a response memorandum indicating its support for the motion to remand and its opposition to the notice of removal.

In response to the motion to remand, Cedyco asserts that the Plaintiff has no viable cause of action against non-diverse Defendants Petroquest and Suard Barge. In fact, Cedyco argues that Baby Oil and Suard Barge have no opposing interests, as Louis O'Neil Suard is the President of both corporations, and recently available evidence indicates that Suard Barge sold 100% of its interest in the well to Baby Oil on July 23, 2003, immediately after its acquisition. The failure to bring the latter fact to the Court's attention is evidence that Baby Oil and Suard Barge sought to conceal their aligned interests and perpetrate a fraud on the Court. Additionally, the Plaintiff has failed to pursue any claims against Petroquest. In fact, the purchase and sale agreement between Petroquest and Suard Barge included a provision requiring Suard Barge and its assigns to indemnify Petroquest for claims arising out of Cedyco's assertion of an interest. Baby Oil became an assignee when it purchased Suard Barge's interest, and was bound to indemnify Petroquest. Since this action involves Cedyco's assertion of an interest, Baby Oil has no possibility of recovery on any claims against Petroquest and Petroquest is therefore a nominal party. Thus, at present and at the time of removal, the Plaintiff's only viable claims were against diverse defendants. Cedyco further asserts that the remaining defendants are nominal parties and therefore their consent to this removal was not required.

Cedyco asserts that this case was initially removable and therefore its removal is not subject to the one year time limit for diversity removals under section 1446(b) of Title 28 of the United States Code. In the alternative, Cedyco asserts that pursuant to *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003) the one year time limit should be equitably tolled because evidence has recently become available demonstrating that the Plaintiff has no claims against Suard Barge and Petroquest. This evidence is based on the summary judgment pleadings filed on or about May 21, 2008 in state court, the testimony of Louis O'Neil Suard, alleged principal of both Baby Oil and Suard Barge, and the Plaintiff's failure to pursue any claims against Petroquest-all of which came to light more than one year after the commencement of the action.

In a supplemental response memorandum, Baby Oil and Suard Barge argue that the indemnity agreement with Petroquest has been available since at least April 12, 2005, Cedyco did not depose Mr. Suard until April 13, 2009, Cedyco did not attempt to take his deposition before then, and Cedyco's lack of diligence precludes it from using the *Tedford* equitable exception. Further, the new testimony by Mr. Suard has no bearing on the validity of the joinder of Petroquest. Finally, Plaintiff and Suard Barge reassert that Suard Barge and Petroquest are properly joined.

## III. LAW & ANALYSIS

### A. Fraudulent Joinder Standard

The burden to prove fraudulent joinder is on the removing party and all factual allegations must be evaluated in the light most favorable to the plaintiff. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This burden is a heavy one. "In order to establish that a

7

non-diverse defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (citing *Keating v. Shell Chemical Company*, 610 F.2d 328 (5th Cir. 1980)).

The Fifth Circuit has held that a removing defendant need not obtain the consent of a co-defendant who was fraudulently joined in a suit. *See Jernigan v. Ashland Oil Inc*., 989 F.2d 812, 815 (5th Cir. 1993). Also, the citizenship of an improper party is irrelevant and may be ignored for diversity of citizenship purposes. *See id.* at 814.

**1. Whether the Case was Initially Removable**

The relevant statute, 28 U.S.C. § 1446(b), sets forth the following guidelines regarding removal of actions from state court:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ...

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

In *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000)*,* the Court of Appeals for the Fifth Circuit found that a case was timely removed pursuant to the judicially-created "revival" exception to the thirty-day time limit for removal. The court stated that the first paragraph of Section 1446(b) applies to cases that are removable at the time they are originally filed, while the second applies when cases become removable at a later date. Thus, cases that are

not initially removable, but subsequently become removable, may not be removed more than one year after the commencement of the action. In contrast, cases that are initially removable must be removed within thirty days, but this right may be revived "when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Id*. at 241. Such cases are not subject to the one-year limitation found in the second paragraph of Section 1446(b). The court in *Johnson* noted that the case was initially removable, where defendants were unable to initially remove the case simply because they did not obtain the consent of all co-defendants. The court went on to hold the removing defendant to a thirty-day statutory deadline for removal from the date of the amended complaint, notwithstanding the fact that the removal occurred some eighteen months after the initiation of litigation, because the case was removable as initially filed and the right to remove was revived upon the filing of an amended complaint with allegations that bore no resemblance to the allegations in the original complaint.

In the instant case, Cedyco asserts that this matter was initially removable as Suard Barge and Petroquest were fraudulently joined. If either Suard Barge or Petroquest were appropriately named as non-diverse Defendants, the case is subject to remand. In fact, Cedyco contends the Court should realign the parties to reflect the fact that the interests of Petroquest, Baby Oil and Suard Barge are aligned. According to Cedyco, Suard Barge sold its interest in the well to Baby Oil immediately after receiving the interest from Petroquest. Because Suard Barge and Petroquest no longer had a financial interest at stake, they were never properly named as Defendants in this action. This Court has already found that the matter was not appropriately

removed.[10] Further, Cedyco's instant allegations do not establish whether Suard Barge received a *valid* interest from Petroquest, and whether the alleged subsequent agreement between Suard Barge and Baby Oil created a *valid* assignment. In fact, the Fifth Circuit recognized that pursuant to the sublease between Exxon Company, U.S.A. ("Exxon") and American Explorer, the approval of Exxon is a necessary condition in order for an assignment of Suard Barge's interest to be legally effective. As there is no evidence that the attempted sale of the 26% working interest legally transferred the interest from Petroquest to Suard Barge and from Suard Barge to Baby Oil, the Court cannot find that Suard Barge and Petroquest no longer have any interest in the well or that they are not properly named as parties in this action to determine the appropriate ownership interests in the well. The facts are such that the Court cannot conclude that there was no chance of liability on the part of Suard Barge or Petroquest. This Court is not the proper venue for determining such questions, and thus, the fraudulent joinder issue must be resolved in favor of the possible claim. Accordingly, Suard Barge and Petroquest could not be ruled out as proper parties in this declaratory judgment action and complete diversity was lacking when Suard Barge and Petroquest were initially named in the instant litigation.

Cedyco also asserts that Suard Barge agreed to indemnify Petroquest in connection with Petroquest's sale of its interest. In a subsequent assignment of the interest to Baby Oil, Baby Oil agreed to indemnity Petroquest for any claims arising out of Cedyco's assertion of an interest. Thus, Cedyco contends, Petroquest is not a proper defendant because even if Baby Oil obtains judgment against Petroquest it has no possibility of recovery. However, this argument overlooks

---

[10] *See* Minute Entry issued on March 16, 2005, Rec. Doc. No. 15 in Case 2:05-cv-00033-EEF-ALC.

the fact that if the assignment of interest to Suard Barge, and subsequently to Baby Oil, may not be legally valid, there may be no agreement on the part of Baby Oil to indemnify Petroquest. As noted above, there is no evidence that the purported assignment is valid.

Further, Gulfmark Energy and Semcrude are not just nominal parties. Although Baby Oil was required to dismiss SemCrude after the remand in order to get the bankruptcy stay lifted, Baby Oil still pursues litigation against Gulfmark Energy for paying proceeds of the well to Cedyco instead of Baby Oil.

As the Court finds that this case was not initially removable, *Johnson* is of no avail to Cedyco. Even if it were, application of the revival exception in this case would be inconsistent with the purposes of the time limit for removal as Cedyco would have the unfair tactical advantage of seeing how the case proceeded in state court before removing, and permitting removal at this point would sanction the substantial delay and wastefulness inherent in starting over in federal court after significant proceedings have occurred in state court.[11]

Cedyco has asserted that pursuant to *Johnson,* it need not meet the requirements of the *Tedford* equitable exception. To the contrary, Cedyco's removal is subject to the one-year time limit contained in the second paragraph of Section 1446(b) because the Court finds that the case was not initially removable. There has been no substantial amendment of the pleadings to revive the statutory removal time limit, and the Court declines to realign the parties.  This case was commenced on May 13, 2004. The instant removal on the basis of diversity in the instant case did not occur until June 2, 2008, more than three years after commencement. Cedyco's removal is untimely unless the *Tedford* exception to the one-year time limit applies.

---

[11] *See Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000).

### 2. Whether the Tedford Equitable Exception Applies

Defendant Cedyco asks the Court to apply the estoppel exception articulated by the Fifth Circuit in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). In *Tedford*, the Court reasoned that time requirements in private lawsuits are usually subject to equitable tolling and that the time limit for removal is "merely modal and formal and may be waived." *Id* at 426. To determine if equitable tolling is appropriate in a particular case, the Court analyzed the conduct of the parties. In *Tedford*, the Plaintiff clearly engaged in forum manipulation. Plaintiff filed suit against several defendants in state court, including one non-diverse defendant. After discovering that the non-diverse party was not a proper party, the defendants informed the plaintiff of their intention to remove the matter. Within hours, plaintiff added another non-diverse defendant. Plaintiff then signed and post-dated a notice of non-suit as to the non-diverse defendant before the one-year period expired, but did not file the notice until after the one-year period passed. After receipt of the notice of non-suit, defendants removed the matter. Given such clear evidence of forum manipulation, the Fifth Circuit found appropriate the application of an equitable exception in the form of estoppel. *Id.* at 425. The Court held, "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its right, equity may require that the one-year limit in § 1446(b) be extended." *Id.* at 428-29. The Court also emphasized that the defendants had been vigilant in seeking removal. *Id.* at 428.

Other courts have found equitable grounds to extend the time for removal under § 1446(b) on similar showings of forum manipulation by plaintiffs. For example, in *Shiver v. Sprintcom, Inc.*, plaintiff filed suit against diverse defendants in state court. 167 F.Supp.2d 962,

962 (S.D. Tx. 2001). After the case was removed, the plaintiff dismissed the suit. Thereafter, the plaintiff filed a second, identical suit in state court, adding a non-diverse defendant. On the eve of trial, plaintiff non-suited the non-diverse defendant. The defendant removed, and the court denied the motion to remand due to forum manipulation. *Id.* at 963. *See also Kinabrew v. Emco-Wheaton, Inc.*, 936 F.Supp. 351 (M.D. La. 1996) (denying motion to remand where plaintiff intentionally delayed service of process until the one-year period had expired); *Morrison v. Nat'l Benefit Life Ins. Co.*, 889 F.Supp. 945, 947 (S.D. Miss. 1995) (denying motion to remand where plaintiff admitted to forum manipulation).

In *Tedford, Shiver, Kinabrew* and *Morrison,* the courts equitably tolled section 1446(b)'s one year time limit because all the plaintiffs engaged in clear instances of forum manipulation and all the defendants rapidly removed the cases. Cedyco argues that the Plaintiff has likewise engaged in forum manipulation. Cedyco contends that the summary judgment pleadings filed on or around May 21, 2008 evidencing the alignment of interests between Baby Oil and Suard Barge, and the newly available testimony of Louis O'Neil Suard, serve as proof of forum manipulation and justifies the application of the *Tedford* equitable exception.

Despite the Fifth Circuit's holding in *Tedford*, the party invoking removal jurisdiction bears the burden of establishing jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir.1997). Cedyco fails to meet this burden.

To support its removal in the instant matter, Cedyco cites deposition testimony provided by Louis O'Neil Suard on January 3, 2008 purportedly demonstrating that Baby Oil knew for a fact that Suard Barge did not own any of the 26% working interest at the time that Baby Oil filed the petition for declaratory judgment. Louis O'Neil Suard testified:

13

"Q: Does Baby Oil have an interest in the C L & F No. 2?

A: Yes. Percentage wise, we are fighting over that right now, so that's part of the lawsuit.

Q: Now, does Baby Oil have the interest, or is it Suard Barge Services that has the interest?

A: Baby Oil bought Suard Barge Services' interest.

Q: When did they buy that interest?

A: About four years ago. I mean, right after - right after I purchased it, you know, within 60 days probably.

Q: Describe for me that transaction. What were the terms, the conditions?

A: No terms. It was Baby Oil - excuse me, Suard Barge Service had the money to do the deal. Baby Oil didn't at the time, so I used Baby Oil - excuse me. Suard Barge Service financials. The deal went down and Baby Oil probably paid $1000 or $2000, something minute, so that it would have - it would have ownership of it.

Q: But there was an assignment of the interest?

A: Yes. Yea. It was all notarized, documented.

Q: And so Suard Barge Service no longer has an interest in the well?

A: Right.

Q: So they divested themself (*sic*) 100 percent?

A: One hundred percent."

If Louis O'Neil Suard acted upon his intent to convey Suard Barge's interest to Baby Oil, it is troubling that throughout the Plaintiff's pleadings, the fact that Suard Barge even attempted to sell its interest to Baby Oil is absent. Such failure to mention the attempt by Defendant Suard Barge to convey its interest to Plaintiff gives rise to an odor of manipulation. However, although the testimony indicates that Louis O'Neil Suard believed Suard Barge assigned its interest in the well to Baby Oil, as stated above it does not establish whether Suard Barge received a valid interest from Petroquest, and whether the alleged subsequent agreement between Suard Barge and Baby Oil created a valid assignment. Though suspicious, the record in this case does not present the egregious, clear pattern of forum manipulation as in the above-cited cases.

In this case, Petroquest may be operating under the assumption that it is protected by an indemnity agreement in an assignment between Suard Barge and Baby Oil. That assignment may be invalid. Plaintiff may currently refrain from prosecuting claims against Petroquest. However, such conduct hardly rises to the transparent attempt to circumvent federal jurisdiction presented in *Tedford*. In *Tedford* and its progeny, the Court was not required to engage in speculation to interpret the cause of the Plaintiff's conduct. In this case, the Court would have to engage in such speculation, but declines the invitation to do so. Though the Court agrees that the rule lends itself to abuses, the Court also agrees that "it is for the Congress and not this Court to rewrite the provisions of section 1446(b) to curb such abuses." *Caudill v. Ford Motor Co.*, 271 F.Supp.2d 1324, 1327 (N.D. Ok. 2003).

In enacting § 1446(b), Congress intended to reduce the opportunity for removal after substantial progress has been made in state court. *Tedford*, 327 F.3d at 427 (citing H.R.Rep. No. 889, at 72(1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6032). *Tedford* addresses an unintended

issue created by the rule: that "[s]trict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction." *Id.* However, this Court must balance the exception articulated in *Tedford* with the general rule that removal jurisdiction is to be strictly construed, as its application "deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). As noted above, this case has already made substantial progress in state court. In fact, a motion to compel Cedyco to release sales proceeds attributable to the 26% interest and a motion for summary judgment on the ownership of the well were pending in state court when Cedyco removed the case.

Furthermore, Cedyco has not been vigilant in asserting its rights. The indemnity agreement has been available since at least April 12, 2005. The deposition of Louis Suard took place on April 13, 2009, nearly five years after the case was first filed in state court. Cedyco filed its second notice of removal on June 2, 2008. In stark contrast to the defendants in the previously mentioned cases, Cedyco waited over three years to take the deposition of the person most likely familiar with the transactions between Baby Oil and Suard Barge, despite the fact that Cedyco set forth these same allegations in "broad conclusory statements"[12] in its original removal in 2005. Cedyco asserts no allegations that Baby Oil in any way prevented Cedyco from conducting discovery. This unexplained delay does not amount to the vigilant protection of removal rights.

---

[12] *See* Order & Reasons issued on April 6, 2005, Rec. Doc. No. 19 in Case 2:05-cv-00033-EEF-ALC.

Accordingly, since the Plaintiffs did not engage in blatant forum manipulation, Cedyco did not vigilantly assert its removal rights, and this action has already made substantial progress in state court, this case is not subject to the *Tedford* equitable exception of estoppel.

**B.	Costs**

Regarding Plaintiff's request for payment of costs and expenses, including attorney fees, pursuant to 28 U.S.C. § 1447(c), such an award is committed to the discretion of the court. While 28 U.S.C § 1447(c) does not indicate how a court is to exercise its discretion in deciding whether to award costs and expenses, the Fifth Circuit Court of Appeals holds that the propriety of the Defendant's removal is central to this determination. *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir.1993). In particular, the court should consider the "weakness" of the removal question. *Id.* In this case Defendant offered a persuasive and meritorious argument, even though unsuccessful, as to how it fulfilled the requirements of 28 U.S.C. § 1446(b). Furthermore, the Court does not find that the removal by the Defendant was frivolous or in bad faith. Accordingly the Plaintiff's request for costs and expenses is DENIED.

**II.	CONCLUSION**

IT IS ORDERED that Baby Oil's Motion to Remand should be and hereby is GRANTED and Baby Oil's request for costs is hereby DENIED. The above captioned case is REMANDED to the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.

New Orleans, Louisiana, this 30th day of July, 2009.

_____
United States District Judge